**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | 24-13990 |
| | ) | |
| EGZIT CORPORATION | ) | |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| | ) | Judge Deborah L. Thorne |
| Debtor. | ) | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS: (A) AUTHORIZING DEBTOR TO FACTOR AND INCUR POST-PETITION SECURED INDEBTEDNESS; (B) GRANTING SECURITY INTERESTS AND SUPER PRIORITY CLAIMS; (C) AUTHORIZING USE OF CASH COLLATERAL AND TO SET A FINAL HEARING**

NOW COMES EGZIT CORPORATION ("EGZIT"), by and through their attorney, Saulius Modestas and submits this Emergency Motion for Interim and Final Orders Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code and to Set a Final Hearing (the "Motion"). In support of the Motion, Debtor states as follows:

1. The Debtor commenced this case by filing a Chapter 11 petition on September 20, 2024. Debtor has chosen to proceed under Subchapter V of Chapter 11.

2. The Debtor continues to manage and operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Code.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory relief requested by the Motion are 11 U.S.C. §§361 and 363, Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois ("Local Rules").

5. The Debtor is a trucking company and has filed the case to reorganize its debts and obligations in order to prevent the liquidation and closure of its business.

6. As many trucking companies do, Debtor's practice is to use a factoring service for the prompt payment and orderly, efficient collection of the Debtor's accounts receivable.

7. Debtor desires to enter into an agreement with Source Funding, Inc. ("SOURCE") whereby they would present an account for purchase by or assignment to SOURCE and in return SOURCE would immediately advance to Debtor a sum equal to the purchase price of the account,

which is 98.0% of the face value of the account. The proposed factoring agreement is attached as <u>Exhibit 1</u>.

8.  The proposed agreement attached as <u>Exhibit 1</u> between Debtor and SOURCE grants a lien as follows:

> **4.  Security Agreement:**
>
> **a. Security for Obligations.** As security for the payment and performance of the Assignor's obligations hereunder, including the costs and expenses incurred by Assignee in connection with the enforcement of its rights under this Agreement, Assignor does hereby pledge, assign, transfer, deliver and grant to Assignee, a continuing and unconditional security interest in and to the following property (all of which property, along with the products and proceeds therefrom, are individually and collectively referred to as the **"Collateral"):**
>
> i.  All real and personal property of the Assignor;
>
> ii. All accounts of the Assignor, including but not limited to, the Accounts accepted by Assignee hereunder, wherever located, now existing or arising in the future, and now owned or at any time acquired by Assignor, together with all proceeds and monies due or becoming due on such Accounts;
>
> iii. All guaranties, insurance, and security for the Accounts;
>
> iv. All of Assignor's chattel paper, instruments, general intangibles, securities, contract tights, and insurai1ce associated with or related to the Accounts;
>
> v.  All personal property, equipment, inventory, and deposit accounts; and
>
> vi. All proceeds of any of the foregoing.

9.  In order to continue its operations, it is necessary for the Debtor to enter into a factoring arrangement with SOURCE. If the Debtor is not permitted to immediately factoring its invoices, the Debtor's cash flow will be disrupted, which will render the Debtor unable to operate in the ordinary course of its business and to timely pay its ongoing operational expenses. Absent prompt entry of the Interim Order, immediate and irreparable harm to the Debtor's estate and its creditors will occur. The Debtor is unable to obtain: (A) unsecured credit allowable under 11 U.S.C. § 503(b)(1) as an administrative expense; (B) unsecured credit allowable under 11 U.S.C. § 364(a) or (b); or (C) credit solely with the protection afforded under 11 U.S.C. § 364(c)(1). To the extent its relationship with the Factor is a credit relationship, the Debtor is unable to obtain credit without the Factor being: (A) given priority over any and all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) or 507(b), except United States Trustee fees and professional fees allowed and payable under 11 U.S.C. §§ 330, 331 and 503; (B) secured by a first lien on all property of the estate that is not otherwise subject to a lien; and (C) secured by a junior lien on property of the estate that

is subject to a lien. Post-petition credit on such terms is authorized by 11 U.S.C. §§ 364(c)(1), (c)(2) and (c)(3).

10. SOURCE is agreeable to enter into the factoring agreement with Debtor, but in return, SOURCE must be secured by a senior lien in the Cash Collateral.

11. There are senior liens in the Cash Collateral and they will be noticed with this emergency motion and have been participating in the case regarding the Cash Collateral since October 2024.

12. By this Motion, the Debtor requests the entry of interim and final orders authorizing the Debtor to factor, incur post-petition indebtedness and use Cash Collateral pursuant to Sections 361 and 363 of the Code and pursuant to Bankruptcy Rule 4001, schedule, a hearing ("Final Hearing") for this Court to consider entry of a final order authorizing the use of factoring and Cash Collateral, as set forth in this Motion. The proposed order to be entered is attached hereto.

13. Local Rule 4001-2, which governs cash collateral motions filed within this Judicial District, requires the Debtor to highlight certain provisions contained in the Order, identify the location of any such provision in such order, and state the justification for the inclusion of such provision. The Debtor believes that Local Rule 4001-2 is minimally implicated by the provisions of the Order, but to the extent that Local Rule 4001-2 is implicated, that such provisions are justified and necessary in the context and circumstances of this case.

14. Local Rule 4001-2(A)(3) requires that all cash collateral motions provide a summary of all provisions that must be highlighted under Local Rule 4001-2(A)(2) and a summary of the essential terms of the proposed usage of cash collateral. Debtor states that it has complied with this requirement by attaching the Order, which contains all of the terms of the Debtor's use of Cash Collateral, including those specifically referenced in Local Rule 4001-2(A)(3).

15. Local Rule 4001-2(A)(4) provides that all cash collateral motions must provide a budget covering the time period in which the order shall remain in effect. In satisfaction of such requirement, attached to the Motion as Exhibit 2 is a copy of the budget ("Budget"). The Debtor shall file updated versions of the Budget with the Court as such updates become available.

16. Under Section 363(c)(2) of the Code, the Debtor may not use the Cash Collateral without the consent of the secured lender or authority granted by the court. 11 U.S.C. §363(c)(2). Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. §363(e).

17. As adequate protection for SOURCE's interest in the Cash Collateral, the Debtor proposes to use the Cash Collateral solely for the purposes outlined in the Order. The Debtor further proposes to grant a super priority claim to SOURCE.

18. The Debtor requests that the Court find that the foregoing adequate protection to be granted to SOURCE is reasonable and sufficient to protect their interests, without prejudice to the right of SOURCE to request additional adequate protection in the future.

19. Debtor has sent this Motion via email to all parties who have participated in the previous cash collateral heraings.. Debtor requests that given the circumstances and necessity that notice be deemed sufficient under the circumstances.

**WHEREFORE**, the Debtor prays for entry of the Proposed Cash Collateral Order, approve the Post-Petition Factoring Agreement with Source Funding, Inc., deem the shortened notice of this Emergency Motion sufficient, continue Debtor's cash collateral motion for status to June 4th, 2024 at 1:15 pm or any other such time as the Court orders and granting such other and further relief as the court deems equitable and just.

/s/ Saulius Modestas
SAULIUS MODESTAS, ARDC #6278054

Saulius Modestas
Modestas Law Offices, P.C.
401 S. Frontage Road, Ste. C
Burr Ridge, IL 60527
A.R.D.C. No. 6278054
(312) 251-4460

# FACTORING AGREEMENT WITH RECOURSE

**THIS AGREEMENT** is made as of the date indicated below by and between Source Funding, Inc, a Corporation having its principal place of business at 660 81st Ave B, Merrillville, IN 46410 ("**Assignee**") and the undersigned "**Assignor**" identified below:

"**Assignor**":

Name: EGZIT CORPORATION

Phone: (630) 457-1222

Address: 1510 PLAINFIELD RD STE 5 DARIEN, IL 60561-4919 DU PAGE

Tax ID: 47-1288506

E-mail: marija@egzitcorp.com

## RECITALS

**WHEREAS**, Assignor is engaged in the business of providing for-hire motor carrier services in intrastate and/or interstate commerce and Assignor normally performs its services for customers on a credit basis;

**WHEREAS**, Assignor desires to sell to Assignee all of its existing and future Accounts Receivable arising from services performed in the regular operation of Assignor's business to Assignee;

**WHEREAS**, Assignee desires and is willing to purchase certain of those Accounts, in Assignee's sole discretion, according to the terms and conditions set forth herein;

**NOW THEREFORE**, in consideration of the mutual covenants set forth herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Recitals**: The Recitals set forth above are incorporated herein.

2. **Assignment of Accounts**: Assignor hereby offers and agrees to present to Assignee for purchase, all rights to payment for services rendered by or on behalf of Assignor ("**Accounts**") arising from the services performed by Assignor, with the Assignee retaining the right to recourse. Assignee shall have the right to purchase Accounts from Assignor in Assignee's sole discretion. For such Accounts as Assignee elects to purchase, Assignor agrees to assign, sell, convey, and deliver to Assignee, such Accounts, and Assignee shall become the absolute owner of such Accounts.

   a. **Notice**: Assignor agrees to notify each person or other entity obligated to pay each Account sold to Assignee ("**Account Debtor**"), of such assignment accepted by Assignee as follows:

      i. Assignor shall deliver to each new Account Debtor a Notice of Assignment in a form as provided on **EXHIBIT A**.

      ii. Assignor shall place on each invoice, statement, or purchase order for an

1771212v1

1


Initial

Account accepted by Assignee for purchase the following statement in clear terms:

**This account has been transferred and re-assigned to Source Funding Inc. By law payment must be made to Source Funding Inc, P.O. Box 872632, Kansas City, MO 64187.**

    b.    **Payments received by Assignor**: All payments received by Assignor for payment of Accounts purchased by Assignee shall be the property of Assignee, and Assignor shall hold all proceeds of such payments in trust for Assignee. Assignor shall immediately deliver to Assignee all payments received by Assignor on each such Account, together with all documents accompanying the payment to Assignor.

3.    **Representations and Warranties**: Assignor represents and warrants as follows:

    a.    For each Account offered to Assignee, Assignor has acted as the actual motor carrier on the transaction and all services were provided under Assignor's Federal or State motor carrier authority issued by the Federal Motor Carrier Safety Administration ("**FMCSA**") or, in the case of intrastate shipments, by the applicable State authority.

    b.    For each Account offered to Assignee, Assignor has investigated and confirmed the credit-worthiness of the Account Debtor on such Account and Assignor has no knowledge or information indicating that the Account Debtor is unable to make payments as they become due in the ordinary course of business.

    c.    For each Account offered to Assignee, the Account is current, arose in the ordinary course of Assignor's business, represents an amount due for services performed and completed by Assignor, is a legally enforceable debt owed by Account Debtor to Assignor in its full face amount, and is not subject to setoff, credits, allowances, counterclaims, or defense.

    d.    For each Account offered to Assignee, Assignor has sole title to the Account and the Account has not been assigned or pledged nor is the Account subject to any claim, lien, or security interest.

    e.    Assignor is a corporation or other business entity duly organized, existing, and in good standing under the laws of the State of IL_____, that the execution, delivery, and performance of this Agreement are within Assignor's power and execution of this Agreement has been duly authorized by Assignor.

    f.    Assignor's address set out at the top of this Agreement is the address of Assignor's principal office and its sole place of business. Assignor shall give Assignee immediate written notice of any change in the location of its principal office, the addition of any new place or places of business and their addresses, any name change or the addition of any name under which Assignor does business, or any change in the nature or status of Assignor's business or operations.

    g.    In addition to Assignor's notice obligations set forth above, during the term

1771212v1    2

*Initial* El

of this Agreement, neither Assignor nor any of its owners shall, without the prior written consent of Assignee, sell or permit or effectuate the sale or transfer of Assignor's assets (other than in the ordinary course of business), Assignor's operating authority, or a majority of Assignor's stock, equity or other ownership interests, in one or more transactions, or incorporate, organize or otherwise create a new company, entity, or business engaged in substantially the same business as Assignor, whether in the same state as Assignor's current location or in a different state, whether under the same name or a different name, and regardless of whether it has the same ownership or management as Assignor. Assignor expressly acknowledges and agrees that any such new company, entity, or business created without the written consent of Assignee shall be liable for Assignor's obligations hereunder as if such company, entity, or business was party to this Agreement directly with Assignee.

4. **Security Agreement**:

    a. **Security for Obligations**. As security for the payment and performance of the Assignor's obligations hereunder, including the costs and expenses incurred by Assignee in connection with the enforcement of its rights under this Agreement, Assignor does hereby pledge, assign, transfer, deliver and grant to Assignee, a continuing and unconditional security interest in and to the following property (all of which property, along with the products and proceeds therefrom, are individually and collectively referred to as the "**Collateral**"):

    i. All real and personal property of the Assignor;

    ii. All accounts of the Assignor, including but not limited to, the Accounts accepted by Assignee hereunder, wherever located, now existing or arising in the future, and now owned or at any time acquired by Assignor, together with all proceeds and monies due or becoming due on such Accounts; iii. All guaranties, insurance, and security for the Accounts;

    iv. All of Assignor's chattel paper, instruments, general intangibles, securities, contract rights, and insurance associated with or related to the Accounts;

    v. All personal property, equipment, inventory, and deposit accounts; and

    vi. All proceeds of any of the foregoing.

    b. **Possession and Transfer of Collateral**. Unless the Assignor breaches any warranty contained herein or fails to observe or perform any of the provisions or obligations of this Agreement, Assignor shall be entitled to possession or use of the Collateral. Assignor shall not sell, assign (by operation of law or otherwise), license, lease or otherwise dispose of, or grant any option with respect to any of the Collateral, without prior approval of Assignee.

    c. **Financing Statements**. Assignor shall upon Assignee's request, at any time and from time to time, execute and deliver to Assignee such financing statements, amendments and other documents and do such acts as Assignee deems necessary in order to establish and maintain valid, attached and perfected security interests in the Collateral in favor of the Assignee. Assignor

1771212v1                                     3



hereby irrevocably authorizes Assignee at any time, and from time to time, to file in any jurisdiction any initial financing statements and amendments thereto without the signature of Assignor that (a) indicate the Collateral, and (b) contain any other information required by Section 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed. Assignor hereby agrees that a photocopy or other reproduction of this Agreement is sufficient for filing as a financing statement and Assignor authorizes Assignee to file this Agreement as a financing statement in any jurisdiction. Assignor further ratifies and affirms its authorization for any financing statements and/or amendments thereto, executed and filed by Assignee in any jurisdiction prior to the date of this Agreement.

        d.    **Other Actions as to any and all Collateral**. Assignor agrees to take any other action reasonably requested by Assignee to ensure the attachment, perfection, and the ability of Assignee to enforce Assignee's security interest in any and all of the Collateral. Assignor further agrees to indemnify and hold Assignee harmless against claims of any Persons not a party to this Agreement concerning disputes arising over the Collateral.

        e.    **Further Assurances, Fees and Expenses**. Upon request by Assignee, Assignor shall execute any additional Security Agreement in a form provided by Assignee evidencing the foregoing security interest granted hereunder. Assignee may file financing statements and amendments thereto describing as the collateral any or all of the foregoing collateral by any description Assignee deems appropriate in any jurisdiction or office Assignee deems appropriate to perfect and maintain its security interest therein, and Assignor expressly authorizes the same. Assignor agrees to bear the cost of all filing fees, filing taxes, search reports, legal fees and other charges or costs incurred by Assignee in the perfection, protection and preservation of the rights and collateral security herein granted to Assignee.

        f.    **Enforcement**. In the event of Assignor's breach of any warranty made herein, or Assignor's breach of this Agreement, or Assignor's failure to perform any of the provisions or obligations contained in this Agreement, Assignor shall be in default, and Assignee may enforce payment and exercise any and all of the rights and remedies provided for in Article 9 of the Uniform Commercial Code. Additionally, Assignee shall be entitled to take any and all actions necessary to collect the Accounts directly from the Account Debtors.

    5.    **Compensation**:

        a.    **Purchase Price**: The parties hereto agree that the purchase price for each Account purchased by Assignee shall be the gross amount of the Account less any discount or allowance of any nature allowed to the Account Debtor ("**Net Amount**"), and less the Assignee's Fee which shall be __TWO_____ percent (__2__ %) of the Net Amount (hereinafter the "**Purchase Price**").

        b.    **Additional Fees and Charges Payable by Assignor**: Assignor agrees to reimburse Assignee for all out of pocket fees incurred by Assignee relative to the purchase of the Accounts or enforcement of any of Assignee's rights hereunder as well as the following fees:
- Invoice Processing Fee    $ __0.85__


Initial

- Fuel Card Load Fee     $ 0.00
- EFS Check     $ 0.00
- ACH Fee     $ 15.00
- Wire Fee     $ 18.00
- Non-Sufficient Funds Fee (per check)     $30.00
- Funds deposited by Assignor belonging to Assignee     $100 or 10% (whichever is greater)
- Over-Advance Charge     $25.00 or 5% (whichever is greater)

Assignor expressly acknowledges and agrees that all of the additional fees and charges set forth above are subject to change by Assignee from time to time, and that certain additional fees/charges may be assessed based on increased cost to Assignee and/or third party charges. In the event of any such change, Assignee will provide Assignor written notice thereof, and the new fee schedule shall be incorporated herein by this reference.

    c.    **Payment to Assignor**: For each Account offered to Assignee, Assignor shall present to Assignee an invoice, a rate confirmation or similar rate document, a proof of delivery, and such other documents as may be required to collect payment from Account Debtor. Provided no claim or dispute shall then exist with the Account Debtor as to the Account and Assignee accepts the Account for purchase, Assignee shall advance to Assignor the Purchase Price of the Account, less a security reserve equal to **ze** percent (0%) of the Net Amount of the Account ("**Security Reserve**").

Subject to Assignee's right to setoff set forth in paragraph 11 hereunder and following receipt of payment in full on the invoice for the Account by Assignee from the Account Debtor, Assignee shall remit to Assignor the Security Reserve for such Account in complete and full payment of the Purchase Price; provided Assignor is not in default under this Agreement.

6.    **Recourse**: In the event Assignor breaches any warranty of this Agreement or breaches any term set forth in this Agreement, or if any Account purchased by Assignee hereunder is not paid in full on or before the payment due date of such Account, Assignor agrees upon demand from Assignee to immediately repurchase such Account from Assignee in an amount equal to the face amount of such Account less any partial payments received by Assignee from Account Debtor on such Account.

7.    **Term and Termination**:

    a.    **Term**: This Agreement shall have an initial term of **twelve** ( 12 ) months from the date set forth below. In the event no date is indicated below, the Agreement shall be deemed to have commenced on the date the Assignor first offers an Account to Assignee for payment. This Agreement shall automatically renew for successive period of **twelve** ( 12 ) months, unless sooner terminated as set forth below.

Initial: *El*

    b.    **Termination by Assignor**: Assignor may terminate this Agreement effective at the end of any then-current term, by providing Assignee with written notice of Assignor's intention to terminate no less than sixty (60) days prior to the end of the then-current term.

    c.    **Termination by Assignee**: Assignee may terminate this Agreement without cause at any time upon thirty (30) days prior written notice to Assignor. Assignee may, at Assignee's option, immediately terminate this Agreement without notice to Assignor upon the occurrence of any of the following events:

    i.    Insolvency of the Assignor;

    ii.    Assignment for the benefit of creditors of the Assignor's assets;

    iii.    The filing of a petition in Bankruptcy by or against the Assignor;

    iv.    Breach of any warranty by the Assignor; and

    v.    Breach of the terms of the Agreement by Assignor.

8.    **Refactoring**. The Assignor acknowledges and agrees that the Assignee may, from time to time, reassign and resell any Accounts and the Collateral to (i) any other factor; or (ii) such other business entity as Assignee in its sole discretion may determine (any such entity collectively and severally referred to herein as the "**Refactor**"). Pursuant to the terms and conditions of agreements entered into with such Refactor from time to time (the "**Refactoring Agreements**"), the Assignor hereby consents to any such resale, reassignment and hypothecation. Assignor agrees that all agreements, representations, warranties and covenants made by it hereunder shall be deemed to be made both to the Assignee and the Refactor, jointly and severally as the context may require and that the term "**Assignee**" as used throughout this Agreement shall in all instances be interpreted to mean "either the Assignee or the Refactor or both of them." The Assignor agrees that (i) this Agreement is and shall at all times be subject to the terms, provisions and covenants of the Refactoring Agreements which may now or hereafter affect this Agreement and to any renewals, modifications, replacements or extensions thereof; and (ii) the Refactor may exercise all of the Assignee's rights and remedies hereunder whether or not such rights or remedies have been specifically granted herein to the Refactor. The Assignor covenants and agrees that the Refactor, its employees and its agents shall not be liable to it for any act, omission, breach or violation on its part or on the Assignee's part with respect to performance or non-performance of any of the terms and provisions of the Refactoring Agreements, and with respect to performance or non-performance of any of the terms and provisions of this Agreement, or any other agreement between the parties hereto and any indebtedness owing by the Assignor to the Assignee of any kind or nature whatsoever, if any, and that the Assignor shall look solely to the Assignee for enforcement of its rights under this Agreement and the Refactoring Agreements. Assignor agrees to reimburse Assignee for any cost and expense incurred by Assignee related to any repurchase of any Accounts under this Agreement or any Refactoring Agreement or to the extent caused by Assignor's breach of this Agreement.

9.    **Power of Attorney**. Assignor does hereby irrevocably make, constitute and appoint Assignee as its attorney-in-fact with full power and authority to act in its stead for the following

1771212v1    6


Initial

purposes: (a) invoice or bill for, collect, receive, and deposit to Assignee's bank accounts any and all amounts which may be due or become due to Assignor from Account Debtors, and to use Assignor's name for purposes of billing and collection of any and all amounts due from Account Debtors; (b) receive, accept, open, dispose of and redirect any and all mail addressed to Assignor; (c) negotiate any checks received in payment of Accounts whether payable to Assignee or Assignor or both, and endorse the name of Assignor on any checks or other evidences of payment or other instruments or documents that may come into the possession of Assignee on Accounts purchased by Assignee and on any invoices or other documents or instruments relating to any of the Accounts or relating to any collateral or security hereby granted by Assignor to Assignee; (d) in Assignor's name, or otherwise, demand, make claim for, sue for, collect, grant extensions, compromise, discharge, and get or give releases for any and all monies or funds due or to become due on the Accounts; (e) execute and deliver receipts or acknowledgements to Account Debtors for such amounts due which shall be binding upon Assignee and Assignor; (f) notify Account Debtors of the sale of Accounts to Assignee and notify and instruct Account Debtors, in Assignor's name, of the address and procedures for making payments on any Accounts that are sold to Assignee or which constitute collateral hereby granted by Assignor to Assignee; (g) take all steps necessary to ensure payment of such amounts and monies due, and do any and all things in Assignor's name necessary or proper to carry out the purposes intended by this Agreement; (h) file financing statements and all amendments thereto, describing as collateral any or all of the collateral described in Section 4 hereof by any description Assignee deems appropriate in any jurisdiction or office Assignee deems appropriate to perfect its security interest in the collateral described in Section 4 hereof; (i) initiate debit or credit entries through the Federal Reserve Automated Clearing House System (ACH) to any deposit account maintained by Assignee or Assignor wherever located in order to satisfy any obligations of Assignor to Assignee under this Agreement; and (j) make claims under any applicable cargo insurance policy held by or on behalf of Assignor for any cargo loss, damage, theft, delay or injury to cargo, and direct the insurance proceeds to pay any outstanding amounts due to Account Debtors or Assignee as a result of the loss, destruction or damage. It is understood that this power of attorney is coupled with an interest, and is irrevocable until all obligations of Assignor to Assignee under this Agreement have been satisfied. Exercise of the foregoing powers shall be in the sole and absolute discretion of Assignee, but Assignee shall have no obligation to exercise any of the foregoing powers. Nothing contained in this Agreement shall in any way require Assignee to initiate or become a party to any litigation or other legal proceedings. Assignee shall not, under any circumstances, or in any event whatsoever, have any liability for any error, omission or delay of any kind occurring in the collection, payment or settlement of any Account or of any instrument received in full or in part payment thereof or in dealing with any lien, security or guaranty of any such Account. To facilitate Assignee's ability to exercise the power of attorney with respect to insurance policy claims as described in item (j) above, Assignor shall execute and deliver to Assignee an Insurance Power of Attorney, in the form attached hereto as **EXHIBIT B**, which shall grant to Assignee all of Assignor's right, power and authority to make claims under Assignor's cargo insurance policy.

      10.    **Survival**: Assignor's covenants and warranties contained in this Agreement, and all rights and remedies of Assignee hereunder shall survive the termination of this Agreement and shall continue in full force and effect until all Accounts purchased hereunder are paid in full and all debts and obligations of Assignor have been satisfied in full. Assignor shall remain liable to Assignee for any and all unpaid Accounts following termination and Assignee's security interest shall continue until all obligations are paid in full.

1771212v1                                      7


Initial
EL

11. **Setoff**: Assignee shall have the right, in its sole discretion, to setoff against the security reserve and any other sums owing to Assignor by Assignee, all obligations and debts owed by Assignor to Assignee.

12. **Attorneys' Fees**: Assignee shall be entitled to recover from Assignor all reasonable attorneys' fees, court costs, and expenses incurred by Assignee in enforcing any of the terms set forth in this Agreement.

13. **Notices**: Notices hereunder shall be in writing and sent by e-mail to the address below or by overnight delivery service, addressed to the addresses set forth below, except that notice of termination as set forth in paragraph 7 and its subparts shall only be made by overnight delivery service:

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| EGZIT CORPORATION | Source Funding Inc |
| Address: 1510 PLAINFIELD RD SUITE 5 DARIEN, IL 60561 | 660 81st Ave Suite B Merrillville, IN 46410 |
| Tel: (630) 457-1222 | Tel: 800-372-6405 |
| Email: marija@egzitcorp.com | Email: info@sourcefunding.us |

12. **SERVICE OF PROCESS.** ASSIGNOR WAIVES PERSONAL SERVICE OF PROCESS UPON THE ASSIGNOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE ASSIGNOR AT THE ADDRESS PROVIDED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

13. **Waiver of Jury Trial.** EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (b) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.

14. **Waiver of Class Actions**. The terms "**Claim**" or "**Claims**" refer to any disputes, controversies, claims, counterclaims, allegations of liability, theories of damage, or defenses

Initial
EL

between the parties hereto. Whether in state court, federal court, or any other venue, jurisdiction, or before any tribunal, the Parties agree that all aspects of litigation and trial of any Claim will take place without resort to any form of class or representative action. Thus the Parties may only bring Claims against each other in an individual capacity and waive any right they may have to do so as a class representative or a class member in a class or representative action. **THIS CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM.**

15. **Waiver of Consequential and other Damages**: ASSIGNOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST ASSIGNEE ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

16. **Non-Waiver**. The failure or refusal of either party to insist on strict performance with any provision in this Agreement shall not be construed as a waiver or relinquishment of that provision of right of either party.

17. **Complete Agreement**. This Agreement, including the personal guarant(ies) attached hereto which are a material condition hereof, constitutes the sole, entire, and existing agreement between the parties herein, and supersedes all prior agreements and undertakings, oral and written, expressed or implied, or practices, between the parties, and expresses all obligations and restrictions imposed on each of the respective parties during its term, except those specifically modified or changed by mutual written agreement. If any part of this Agreement is adjudged invalid for any reason whatsoever, this Agreement shall remain otherwise binding on the parties and shall be enforceable to the maximum extent permitted by law.

18. **Governing Law and Venue**. This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Kansas and in the event of any disagreement or litigation by and between the parties arising out of this Agreement of otherwise, the laws of Kansas shall apply and suit must be brought solely in the State or Federal courts with jurisdiction in Johnson County, Kansas (provided that nothing herein shall prevent Assignor from bringing any legal suit, action or proceeding in any other jurisdiction to enforce or realize upon any Accounts or Collateral).

19. **Personal Guaranty**. To induce Assignor to enter into this Agreement and to purchase the Accounts from Assignee, and as additional security for all of the debts, liabilities and obligations of Assignee to Assignor under this Agreement, one or more owners of Assignee shall execute the Personal Guaranty form attached hereto as **EXHIBIT C**, pursuant to which said owner(s) shall unconditionally guaranty the obligations of Assignee under this Agreement.

20. **Authorization to Release Insurance Information**. As a material condition of this Agreement, Assignee agrees to execute the Authorization to Release Insurance Information form attached hereto as **EXHIBIT D** for each of its insurers. Such authorization shall be irrevocable during term of this Agreement.

21. **Counterparts**. This Agreement may be executed on more than one conformed

1771212v1                                    9

Initial

*EL*

counterpart and each executed counterpart shall be deemed an original.

**IN WITNESS WHEREOF, ASSIGNEE** and **ASSIGNOR** do hereby sign this Agreement on this 30th day of April, 2025, the effective date of this Agreement.

ASSIGNOR:                                              ASSIGNEE:

                                                       Source Funding Inc

By: _Egzit Corp_                                       By: _Sonja V_
    8BFA3648CD7A45E...                                     3F9C34DA920144B...
Title: Owner                                           Title: Operations Manager

Authorized Representative                              Authorized Representative

# EXHIBIT B
## INSURANCE POWER OF ATTORNEY

STATE OF KANSAS          )
                         ) ss.
COUNTY OF JOHNSON        )

Know all men by these presents, that I, **Ivan Stojanov**, the undersigned, of **DuPage**, USA, , do hereby make, constitute and appoint Source Funding Inc, and any assignee of such entity (collectively, "Factor") my true and lawful attorney-in-fact for me and in my name, place and stead, and on my behalf, for the specific purpose of making claims under any cargo insurance policy held by or on behalf of me or my trucking company known as **EGZIT CORPORATION**. Factor shall have the power to make a claim or exercise any rights, options or benefits under any such insurance policy for any loss, damage, theft, delay or injury to cargo related to accounts receivable that have been purchased by Factor for services rendered by or on behalf of me or my company. Further, Factor shall have the power to direct and/or assign any insurance proceeds resulting from such claim to satisfy any outstanding obligations to account debtors which may exist as a result of any loss, damage, theft, delay or injury to cargo.

The rights, powers and authority of said attorney-in-fact granted in this instrument shall commence and be in full force and effect on the date hereof and such rights, powers and authorities shall remain in full force and effect for the purpose herein specified until all of my obligations to Factor under that certain Factoring Agreement with Recourse dated the **30th** day of **April** 202**5** have been satisfied.

Dated:

By _Egzit Corp_ (Signed by: 8BFA3648CD7A45E...)

Name  Ivan Stojanov

Title  OWNER

1771212v1

12

# EXHIBIT C
## PERSONAL GUARANTY

**Name of Guarantor:** Ivan Stojanov    **SSN:** ███████    **Assignor:** EGZIT CORPORATION

For valuable consideration personally beneficial to the Guarantor and as a material inducement to Source Funding to enter into the Factoring Agreement with Recourse with ASSIGNOR, the undersigned ("GUARANTOR") hereby absolutely and unconditionally guarantees and promises to pay to Source Funding Inc, or to its assignee, all obligations of ASSIGNOR to Source Funding Inc and GUARANTOR agrees that he/she shall be personally subject to and bound by all terms, conditions, restrictions and prohibitions contained in the Factoring Agreement with Recourse. Further, GUARANTOR agrees to personally act as surety for the full and faithful performance of all the obligations, commitments and payments required of the ASSIGNOR in the Factoring Agreement with Recourse or otherwise. This Guaranty is a present and continuing guaranty of payment and not of collectability GUARANTOR agrees that Source Funding Inc need not first pursue any remedies it may have against the ASSIGNOR as a precondition for recovery under this Guaranty but may, instead, proceed directly and primarily against the GUARANTOR with or without joining the ASSIGNOR. The GUARANTOR is both primarily liable and jointly and severally liable for such obligations, commitments, and payments required of ASSIGNOR. Source Funding Inc shall be entitled to recover any and all attorneys' fees from GUARANTOR incurred in pursuing its remedies hereunder. This Guaranty shall be interpreted pursuant to the laws of the State of Illinois and the undersigned consents to the sole and exclusive jurisdiction of the State and Federal Courts located in __IL__.

1. **WAIVER OF JURY TRIAL.** GUARANTOR AND Source Funding Inc (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREE THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. GUARANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST BANK ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

2. GUARANTOR hereby grants to Source Funding Inc a continuing security interest in all of the GUARANTOR's assets, including, but not limited to, all real and personal property of the Assignor; all accounts, accounts receivable, and deposit accounts, wherever located, now existing or arising in the future, and now owned or at any time acquired by Assignor, together with all proceeds and monies due or becoming due on such accounts, all equipment, inventory, and deposit accounts; and proceeds of any of the foregoing (the "**Collateral**"). Source Funding Inc is authorized to file all UCC financing statements and other documents deemed necessary or appropriate by Source Funding Inc to perfect its security interest in the Collateral.

**Signature of Guarantor:** _Egzit Corp_ (Signed by: 8BFA3648CD7A45E...)

1771212v1

13

# EXHIBIT D
## AUTHORIZATION TO RELEASE INSURANCE INFORMATION

I authorize the named insurer to release the information or records specified to Source Funding Inc, or representatives or assignees thereof upon request in person, by mail, or by email to the address or email address specified at the time of the request.

| Insurer: (name and address) | Insured: EGZIT CORPORATION |
|---|---|
| HOXBRIDGE INSURANCE COMPANY INC | Policy Number: HIC80820-853 |

RECORDS AUTHORIZED TO BE RELEASED:



(initials)
- *El* — Applications
- *El* — Contracts and Policies
- *El* — Certificates of Insurance
- *El* — Claims and Claims History
- ____ Risk Management Audits/Reports
- *El* — Additional Insured
- ____ Other (specify): _____

A copy of this authorization may be utilized with the same effectiveness as an original.

Egzit Corporation                                4/30/2025
_____
Insured or Representative                        Date

Ivan Stojanov
_____
Name of Representative

President
_____
Relationship to Insured

1771212v1

14


Initial: *El*

# EXHIBIT 2

**Monthly Operational Cost Projections**

| | |
|---|---|
| Fuel | $61,000.00 |
| Physical insurance | $3,800.00 |
| Trailer rent | $4,200.00 |
| Driver payroll | $12,500.00 |
| Office payroll | $3,000.00 |
| Office rent | $1,200.00 |
| Maintenance | $25,00.00 |
| Tolls | $2,000.00 |
| Operational cost for company vehicle | $1,000.00 |
| Office supplies | $500.00 |
| ELD subscriptions | $1,500.00 |
| Office cost (internet, electricity, etc.) | $1,200.00 |
| Truck Parking | $1,200.00 |
| Driver expenses (hotels, scale receipts, etc) | $2,000.00 |
| Recruiting expenses | $2,000.00 |
| IFTA ` | $600.00 |
| State Fuel Taxes (NY, KY, NM, CT) | $1,600.00 |
| Tablets for ELD given to drivers | $1,200.00 |
| Adequate protection payments | $8,000.00 |
| Tax Reserves | $2,500.00 |
| Unexpected Expenses | $4,000.00 |
| Insurance Down payment | $30,000.00 |
| **Total Projected Monthly Operating Expenses** | **$168,500.00** |

| | |
|---|---|
| **Gross Projected Monthly Income through 6/6/2025:** | $173,435.94 |
| **Net Projected Monthly Income  6/6/2025:** | $3,435.94 |